UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

| | |
|---|---|
| STEPHANIE ALLEN | (P0571471), |
| CATARINA CORREIA | (P0571231), |
| JOY FIRST | (P0571393), |
| VIRGINIA RODINO | (P0571478), |
| TANYA SYNDER | (P0571477), |
| ANNA WHITE | (P0571180), |
| MARICA ANGERMANN | (P0571235), |
| MELINDA BORNE | (P0571184), |
| ANNAMARIA CALDERA | (P0571382), |
| THERESA CAMEROTA | (P0571149), |
| VIRGINIA CASSELL | (P0571239), |
| MELLISA ELLIOT | (P0571377), |
| MARY MCARTHUR | (P0571467), |
| CHRISTY MILLER | (P0571380), |
| GAEL MURPHY | (P0571424), |
| MANIJEH SABA | (P0571459), |
| CINDY SHEERAN | (P0571164), |
| JOHN BARBER | (P0571225), |
| KEVIN KAMPS | (P0571419), |
| PAUL PARK | (P0571304), |
| WILLIAM PEERY | (P0571202), |
| JOSEPH ROBBINS | (P0571139), |
| JOHN RODGERS | (P0571325), |
| ANDREW SCHOERKE | (P0571214), |
| ARTHUR WASKOW | (P0571460), |
| ROSE BERGER | (P0571238), |
| MARIE DENNIS | (P0571153), |
| NANCY TATE | (P0571388), |
| EVE TETAZ | (P0571156), |

Defendants.

Mag. Crim. No. 05-649 (AK)

FILED

DEC - 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## **JUDGMENT**

Each of the 29[1] Defendants before the Court were issued Violation Notices charging them with demonstrating on the sidewalk in front of the White House on the south side of Pennsylvania Avenue, N.W. in the District of Columbia on September 26, 2005. The Defendants were part of approximately three hundred demonstrators on that day who were expressing their opposition to the participation of the United States in the war currently being waged in Iraq. The area where the Defendants were demonstrating and later arrested is a park area administered by the National Park Service. The applicable regulations governing demonstrations on the White House sidewalk[2] require a permit to be issued for any demonstration engaged in by more than 25 persons. 36 C.F.R. § 7.96(g).[3]

The prescribed maximum penalty for the violation of demonstrating without a permit is six months incarceration and or a fine of $500. 36 C.F.R. § 1.3(a); 16 U.S.C. §§ 3 & 462(k). The

---

[1]Prior to the hearing, the Assistant U.S. Attorney prosecuting the case met with the Defendants to ascertain whether any cases could be resolved without a hearing. Some individuals agreed to pay a fine, others had their cases continued or dismissed. The 29 Defendants were those individuals remaining.

[2]The term "White House sidewalk" is defined as the south sidewalk of Pennsylvania Avenue, N.W., between East and West Executive Avenues, N.W. 36 C.F.R. § 7.96(g)(1)(v).

[3] C.F.R.(g)(2) states as follows: "Demonstrations and special events may be held only pursuant to a permit issued in accordance with the provisions of this section except:

> (i) Demonstrations involving 25 persons or fewer may be held without
> a permit provided that the other conditions required for the issuance of a
> a permit are met and provided further that the group is not merely an extension
> of another group already availing itself of the 25-person maximum under
> this provision or will not unreasonably interfere with other demonstrations
> or special events."

2

United States agreed to waive its right to request incarceration. The Court agreed that it would not impose any period of incarceration if any of the Defendants were found to be guilty of the violation. Thus the Defendants were advised that the violation was a petty offense, and that they could be represented by counsel but were not eligible for appointed counsel.

With the exception of Cindy Sheehan, who was represented by counsel, all the Defendants were pro se. The Court permitted Mark Goldstone Esq. to serve as an attorney advisor for the pro se defendants. Mr. Goldstone did not enter an appearance on behalf of any individual Defendant, nor did he make any arguments to the court or examine or cross examine any witnesses. The Court did, however, permit Mr. Goldstone to sit at counsel table and consult with any of the pro se Defendants whose case was being heard and to consult with counsel for Ms Sheehan. The Court also permitted Ms Sheehan's counsel to act in the capacity of attorney advisor to the pro se Defendants.

After an initial dispute regarding the format of the hearings, the United States and all the Defendants agreed upon a joint process through which the Court would hear all of the cases together. Pursuant to the agreed-upon process, the pro se Defendants would select representatives from among them to make an opening statement which would be adopted by all the pro se Defendants, cross examine the witnesses called by the United States, and examine a pre- selected number of witnesses, chosen by the Defendants, who would testify on behalf of all of the pro se Defendants. At the conclusion of the testimony, a representative pro se Defendant would make a closing argument again on behalf of the pro se Defendants.[4]

---

[4] Counsel for Ms. Sheehan stated that he would represent his client separately from the pro se Defendants.

3

Also pursuant to this process, the evidence of Defendants' arrests would be presented in groups according to arresting officer. The Government would call forward a group of Defendants, all of whom had been arrested by one officer. These Defendants would sit in the front row of the courtroom, immediately behind counsel table. After Defendants were seated, the arresting officer would be called into the courtroom to testify. The Court agreed to the hearing format proposed by the Defendants and agreed to by the Government.

### The Hearing

I.   The Permit

In order to sustain a charge of protesting without a permit, the Government must show beyond a reasonable doubt that the Defendants did not, in fact, have a permit to demonstrate on the sidewalk directly in front of the White House.[5] Richard E. Merryman, Chief of the Division of Park Programs of the National Park Service, testified for the Government on this issue.

On July 20, 2005, the National Park Service received an application for a permit to conduct a demonstration in park areas for purposes of protesting the Iraq war and holding a memorial to those killed in it. (Govt.'s Exh. 1.) The application was filed by a Gordon Clark and Peter Perry on behalf of an organization identified as "Iraq Pledge of Resistance." (*Id.* at 8.) Mr. Merryman testified that he was responsible for processing this application and issuing the permit.

The application sought a permit to demonstrate in the vicinity of the White House on September 26, 2005 between 5am through 5pm. (*Id.*) Specifically, the location section of the

---

[5] In the course of announcing the verdicts, the undersigned mis-spoke and stated that the Court was obliged to consider all evidence in a light most favorable to the government. This was an inadvertent error, corrected on the record, and was not the standard actually applied by the Court, namely whether the Government met its burden of persuasion beyond a reasonable doubt.

4

permit stated: "The Elipse, Constitution Avenue between 14th and 16th Streets, N.W., The Elipse Drive behind the White House." (*Id.*) The application estimated the maximum number of participants would be approximately 1,500 individuals. (*Id.*)

Notably, the initial application filed on July 20, 2005 did not seek a permit to protest on the sidewalk in front of the White House. However, on July 28, 2005, the Iraq Pledge of Resistance submitted an addendum to the application. (*Id.* at 11.) The addendum sought to include the White House sidewalk within those Park areas to be covered by the permit. (*Id.*) Mr. Merryman testified that if an application is not denied within 24 hours it is deemed granted. Thus it would appear that the permit application did request that the demonstrators be allowed to lawfully demonstrate in front of the White House, were it not for a subsequent directive from the applicant organization specifically removing the sidewalk area in front of the White House from the locations where the demonstration activity was scheduled to take place.

On September 23, 2005 prior to the issuance of a permit, there was an exchange of e-mail correspondence between Mr. Gordon Clark, one of the applicants for a permit, and a Mr. Harasek of the United States Park Police Intelligence/Counter-Terrorism Unit which resulted in a modification of the locations for which the applicants sought a permit to demonstrate.(*Id.* at 14-19.)

On September 23, 2005 at 11:08 AM, prior to the issuance of the permit, Mr. Harasek, e-mailed Mr. Gordon seeking clarification of the Civil Disobedience that Mr. Gordon's group planned to conduct on September 26, 2005. (*Id.* at 14-16.) He stated:

> I understand that once your group arrives at Lafayette Park and the
> Clergy delegation goes to the Norwest Gate of the White House, that
> they will walk to the center portion of the White House to commit civil

> disobedience and that once they are arrested there will be waves or groups of others who come forward to be arrested.
>
> This process will not work. Once the group goes to the White House sidewalk and commits a violation, the Park Police will revoke the permit, close the area and give three warnings to those that remain. If they don't leave, they will be arrested as we previously spoke about.
>
> If you have more tha[n] the original group of Clergy that are seeking to be arrested they will have to come across onto the White House sidewalk in one group, because we will not allow any others onto the sidewalk, once we close it.
>
> \*        \*        \*
>
> That before the action, they give any other valuables ........
> ....etc. to one of their friends who are not being arrested to hold. This will allow the process to go much faster.
>
> That we intend to probably arrest females first, then males then juveniles.
>
> I will be on the scene in front of the White House and if you seek me out, I will arrange it so that you and other major organizers are not arrested until last, so that you can facilitate the process and reassure the other protesters, if you so wish.
>
> All of the above statements pertain to your previously discussed civil disobedience action on 9/26 with persons who cooperate with us.

(*Id.* at 15-16.)

On September 23, 2005 at 11:44 AM Mr. Gordon Clark responded to Mr. Harasek by e-mail to ascertain what would constitute arrestable violations if the group did in fact have a permit to demonstrate "(in the 'picture postcard zone' directly in front of the White House)." (*Id.* at 14.) He also asked for clarification in the event that the group did NOT have a permit for the White House sidewalk as to whether the police would close the sidewalk if the demonstrators do not

6

commit a violation. (*Id.*)

Mr. Clark concluded the e-mail by stating that the demonstrators were not coming to the event in order to get arrested. "We are coming to deliver a strong message on the Iraq war to the President, and we are willing to risk arrest to do that. If the President would meet with us, as we have officially and repeatedly requested, I dare say there might be no arrests at all." (*Id.*)

Following the above exchange of e-mails, on the same date at 12:56 PM Mr. Gordon Clark e-mailed both Mr. Harasek and Mr. Merryman as follows:

> While I continue to be interested in the answers to the questions I sent earlier, I want to communicate that we do NOT wish our permit to include the White House sidewalk. We would like to include the Elipse and Lafayette Park, of course, as we discussed previously, but to repeat we do not want the permit to include the White House sidewalk. This decision will not change regardless of the answers to my previous questions, so please feel free to finish processing the permit so you can fax it to me this afternoon.........
>
> ps.–Dear Mr. Harasek – Will the number you have given below be a cell phone that we can talk with you over the weekend and on Monday ..... Also you should be aware that we are working with attorney Mark Goldstone on this whole process – I believe you know him.

(*Id.* at 17.)

On September 23, 2005, Public Gathering Permit No. 05-1625 was issued to the organization IRAQ PLEDGE OF RESISTANCE for the locations: The Elipse- SE quadrant, Lafayette Park east side. (*Id.* at -4.) The purpose section of the permit includes the statement "Civil Disobedience is also being planned on the White House sidewalk with approximately 300 individuals participating." (*Id.* at 2.)

II.   The Arrests

The regulation Defendants are charged with violating defines the term "demonstrations" as including "picketing, speech making, marching, holding vigils or religious services and all other

7

like forms of conduct which involve the communication or expression of views or grievances," when that conduct has the "effect, intent or propensity to draw a crowd or onlookers." 36 C.F.R. § 7.96(g)(1)(i).

Each U.S. Park Police Officer who testified stated that on September 26, 2005 they were assigned to work at the area of Pennsylvania Avenue, N.W. in front of the White House. They stated that more than 200 people congregated on the south sidewalk of Pennsylvania Avenue between the east and west gates of the White House and were demonstrating. Specifically they were singing, carrying signs, chanting and eventually sat down on the sidewalk.

The police officers testified that sometime after 1:30 pm the officer in charge, a Lieutenant Smith, via loud speakers on top of his police vehicle drove along Pennsylvania Avenue and announced to the demonstrators that they were in violation of the regulations requiring a permit to demonstrate at that location and directed them to leave the area.

Each of the testifying police officers stated that the warning was given three times at approximately 2-5 minute intervals. Each officer gave substantially the same account of the events leading to the arrest of the Defendants. The police officers testified that the demonstrators were not violent and the demonstration was peaceful, albeit noisy. After the final warning the area was cordoned off. At this point, all the Defendants were considered under arrest. The arrest team moved in to physically detain and process the demonstrators who were under arrest.

The testifying officers each stated that they were responsible for arresting a number of the demonstrators. Some of the arrestees walked to the vehicles for transportation and others were carried onto the vehicles. Each Defendant was handcuffed and photographed with an identifying number placed on the photograph.

After the United States rested its case, the Defendants called three witnesses who were arrested on September 26, 2005 at the demonstration on the sidewalk in front of the White House. They testified that they came to the White House to present petitions to the President and that the persons at the gate refused to accept the petitions. Because the petitions were not accepted they proceeded to the front of the White House where they sang and were a "visible presence." Two of the three witnesses testified that they did not hear any warnings from the police. One of the witnesses stated that demonstrating in front of the White House was the only way they could get their message to the President.

Both at the conclusion of the Government's evidence and the close of the Defendants' evidence the Defendants moved for judgment of acquittal. They made a series of arguments in support of their motion for acquittal. They claimed that 1) the application for a permit to demonstrate included the location on the sidewalk in front of the White House; 2) they had a First Amendment constitutional right to demonstrate; 3) they had exhausted all other means to voice their opposition to the war in Iraq; 4) they did not hear the warning given by the police and were not told of the reason for their arrest.

III.   Verdict

The Court found all the Defendants were guilty beyond a reasonable doubt of demonstrating on the sidewalk in front of the White House without a permit. The Court rejected the Defendants' contention that the addendum to the Application for a permit to demonstrate in the sidewalk area in front of the White House added on July 28, 2005, was, in fact, a lawfully issued permit to demonstrate in that area on September 26, 2005.

The e-mail correspondence between Mr. Gordon and Mr. Harasek clearly shows that the

applicants for the permit knowingly and intentionally wanted the sidewalk area in front of the White House specifically removed from any permit to be issued. Suggesting that a valid permit existed to demonstrate in the location where they were arrested was frivolous.

The First Amendment argument similarly must fail. The applicable regulations expressly allow persons the right to conduct demonstrations and special events on the sidewalk in front of the White House with a valid permit. CFR §7.96(g)(1)(v). No evidence was offered by the Defendants that they were denied the right to obtain a permit to demonstrate on the day and time when they were arrested.

The Defendants' argument that they had exhausted other legitimate means of conveying their views to the President and members of Congress ostensibly was intended to raise the defense of necessity. However that argument is inapposite. The right to protest and demonstrate politically for or against governmental policy does not guarantee that the position being advanced by the demonstrators will be successful. The Defendants, if they had chosen, could have obtained a permit to lawfully demonstrate in front of the White House.

It was, in this Court's opinion, the intent of the demonstrators to engage in civil disobedience by intentionally violating the regulations in order to bring attention to the cause they were advancing. They gave notice of their intent in their discussions with the United States Park Police and the National Park Service Application for a permit. They consciously elected not to pursue a reasonable and legally viable alternative to being arrested and charged with violating the regulation of demonstrating without a permit. *United States v. Bailey*, 444 U.S. 394, 409-410 (1980). Thus the defense of necessity is not a viable defense to their conduct.

The Defendants' final contention that they did not hear the warnings given by the police

and were not told the reason for their arrest is patently not credible. The Defendants appeared to the Court to be sophisticated, educated and familiar with demonstrations. In fact one witness gave as her occupation that she was an activist. Both the police and the witnesses testifying on behalf of the Defendants acknowledged that there was a festive atmosphere during the demonstration. One of the testifying Defendants stated that she called to a friend who was on the other side of a barrier in the roadway of Pennsylvania Avenue and asked them to send over food and drinks for the demonstrators. The Court did not find the argument that the Defendants did not hear the warnings or that they did not know why they were being arrested to be credible.

Having found all the Defendants guilty of demonstrating without a permit the Court fined each Defendant $50 plus a processing fee of $25.

Dated: December 7, 2005

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE